UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SETH HETTENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-0877 (JEB) |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY**

The Central Intelligence Agency ("Defendant" or "CIA"), by and through the undersigned counsel, respectfully submits this Opposition to Plaintiff Seth Hettena's ("Plaintiff's") cross-motion and reply in further support of its motion for summary judgment.

**BACKGROUND**

The genuine and material facts of this case are largely undisputed except where otherwise stated.  *Compare* ECF No. 13-1 ("Def. Stmt."), *with* ECF No. 17-2 ("Pl. Stmt.").  Plaintiff commenced this action under the Freedom of Information Act ("FOIA"), seeking a copy of the CIA's Office of Inspector General's ("Inspector General") report of an investigation into the death of Manadal al-Jamaidi (aka Mandel al-Jamadi), including but not limited to an Inspector General report dated November 3, 2005.  *See* Def. Stmt. at 1.  The CIA denied Plaintiff's request in part pursuant to Exemptions 1, 3, 5, 6, 7(C), and 7(D).  *See generally id.*  Plaintiff "does not contest the CIA's redaction of identifying information under Exemptions 6, 7(C), and 7(D)."  Pl. Br. (ECF No. 17-1) at 6 n.3.  Further, Plaintiff does not dispute that "[d]isclosing details of the intelligence methods contained in the 2005 [Inspector General r]eport therefore would significantly impair the

CIA's ability to continue to collect intelligence and conduct operations." *See id.*; *see also* Pl. Stmt. ¶ 20. Also, Defendant's proffer that information was withheld under FOIA Exemption 3 as well as withholding statutes 50 U.S.C. § 3507 (the "CIA Act") and the National Security Act of 1947, 50 U.S.C. § 3024(i)(1) (the "National Security Act") as well as Executive Order 12,333 to protect sources and methods is undisputed. *See* Def. Stmt. ¶ 23; Pl. Stmt. ¶ 23.

## ARGUMENT

As noted above, the issues before the Court are relatively narrow at this stage. As explained herein, the remaining challenges that Plaintiff advances do not counsel against entry of summary judgment in favor of the CIA and against Plaintiff. Plaintiff's contention that the public acknowledgment doctrine requires release of the CIA Inspector General report has no merit; none of the public statements to which Plaintiff points align with the particular contents of the report at issue. And the CIA's declarant has attested that the agency properly relied upon the National Security Act and the CIA Act to withhold certain information in order to protect, among other things, national security, and no foreseeable harm showing is required for such withholdings made pursuant to Exemption 3. Moreover, the Court need not address whether the agency properly relied upon Exemption 5 after having concluded that withholding was necessary in order to guard against foreseeable harm, because the very same information also was withheld pursuant to Exemption 3, for which no such showing is necessary.

A. **CIA Has Not Publicly Acknowledged the Inspector General Report.**

Plaintiff's challenges Defendant's withholdings under Exemptions 1 and 3 by invoking the public domain or official acknowledgement doctrine. According to Plaintiff, "[t]he CIA Director himself declassified and officially acknowledged the facts" that "'CIA personnel were present during the military's capture of Al-Jamadi,'" "'questioned Al-Jamadi at the SEAL compound at

Baghdad International Airport'" and Abu Ghraib prison; the "'[s]tatements of CIA personnel (minus their names and other classified information) regarding what they did and what they observed during the capture and questioning of Al-Jamadi; and [t]he fact that the CIA Office of Inspector General is investigating allegations of impropriety in the Al-Jamadi case." Pl. Br. at 4, 8. Plaintiff also argues that the CIA somehow "officially acknowledged the contents of the Army [Criminal Investigation Division] report." *Id*. at 9. On this issue, Plaintiff also speculates that disclosing facts about the possible cover-up "would not reveal intelligence sources, methods, or activities, or any of the narrow categories of information protected by the CIA Act." *Id*. at 10. Notably, nowhere in his filing does Plaintiff aver that a CIA director or the CIA itself has ever declassified the entire Inspector General report about Al-Jamadi's death. Nor can he, for, although CIA released certain summarized information that Plaintiff quotes, it has never released the full Inspector General report, which would provide many details that have not been officially acknowledged, and thus Plaintiff has not shouldered its burden to point to the specific prior release of the same information that the agency has withheld here.

> **Commented [A1]:** We are quoting something here, so I assume we can find a pincite. Please insert it here.

The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011). For an item to be officially acknowledged, three criteria must be met: First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. Third, the information requested must already have been made public through an official and documented disclosure. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim."). A plaintiff mounting an official acknowledgment challenge "must bear the initial burden of pointing to specific information in the

3

public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). As the Supreme Court recently summarized:

> Lower courts have explained that the official acknowledgement doctrine recognizes the reality that official confirmation of sensitive information may pose risks that unofficial disclosure does not. It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so. Official confirmation may dispel lingering doubts or reveal that the information currently in the public domain is incomplete or itself a cover story.

*United States v. Zubaydah*, 142 S. Ct. 959, 970 (2022).

Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure. *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201-203 (D.C. Cir. 1993) ("We have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations."). "The Government's vital interest in information relating to national security and foreign affairs dictates" employing "a high hurdle for a FOIA plaintiff to clear." *Id*. at 203. While he may be able to point to some information from the Inspector General report that had been declassified or in the public domain, Plaintiff is unable to demonstrate that the entirety of the Inspector General report has been previously disclosed by official acknowledgement. This fact is fatal to Plaintiff's argument under Circuit precedents.

Indeed, this rationale was roundly rejected in *Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981), where the D.C. Circuit upheld the CIA's Exemption 1 and 3 claims even though there had been both official and unofficial disclosures about the Hughes Glomar project. "The key premise on which the appellants base their argument that 'the cat is already out of the bag' is unsupported by the record and contrary to the government's affidavits. The government's affidavits are entitled to substantial weight." 656 F.2d at 745. "[I]t is far from clear that either

4

the purpose of the Glomar Explorer mission or the technology used to accomplish that mission are in fact known." *Id*. at 750 (rejecting the requesters' argument "that because *some* information about the project ostensibly is now in the public domain, *nothing* about the project in which the [requesters] have expressed an interest can properly remain classified" (emphasis in original)).

Here, Plaintiff argues that official acknowledgement of the CIA's involvement in the apprehension and death of Mr. al-Jamadi somehow constitutes official acknowledgement of all the facts contained in the Inspector General report. *See generally* Pl's Br. Even more inexplicably, he argues that the release of another agency's report constitutes official acknowledge of the CIA's Inspector General report. Plaintiff's arguments are contrary to this Circuit's law. "[E]ven if the CIA at one time acknowledged the existence of an intelligence relationship with [Iranian secret police], which is information that fits into one of the categories of information withheld in this lawsuit, the release of a series of telegrams and cables recording particular contacts in the relationship might well provide new information regarding the extent and nature of the liaison." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (holding that disclosures contained in books authored by former CIA agents and officials—screened and approved by the CIA—are not "tantamount to official executive acknowledgments"). The D.C. Circuit has "unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Fitzgibbon*, 911 F.2d at 766.

Plaintiff's argument that the CIA has declassified some information about the handling of Mr. al-Jamadi fares no better. This Court has rejected that argument even where portions of memos have been released and requesters have argued that the entire memo should be deemed officially acknowledged. *See Connell v. CIA*, Civ. A. No. 21-0627 (CRC), 2023 U.S. Dist. Lexis

5

54171, *15 (D.D.C. Mar. 29, 2023) ("[A]ny CIA acknowledgment flowing from the declassification of the Executive Summary would only . . . imply CIA 'operational control' over the fourteen detainees. That is not enough to establish public acknowledgement."); *ACLU v. Dep't of Def.*, 664 F. Supp. 2d 72, 77 (D.D.C. 2009) (concluding that the government's release of a declassified memorandum and report does not demonstrate that the requested information is in the public domain where the "redacted information . . . is specific and particular to each detainee and would reveal far more about the CIA's interrogation process than the previously released records"), *aff'd*, 628 F.3d 612 (D.C. Cir. 2011)). Besides, courts are mindful of the "perverse theory that [would] effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure." *Pub. Citizen*, 11 F.3d at 203.

Any argument that the entirety of the Inspector General report is subject to the public domain doctrine because the Army released its own report is similarly flawed. A different agency's release of a different report, even if it may generally concern the same or a similar topic, is entirely insufficient to satisfy a plaintiff's heavy burden under the official acknowledgment doctrine.

In sum, because Plaintiff plainly has failed to satisfy the applicable doctrinal requirements, and especially given courts' deference to the agency's views on national security matters and acceptance of the validity of agency affidavits, *Military Audit Proj.*, 656 F.2d at 753, the CIA's withholdings pursuant to Exemptions 1 and 3 should be upheld and Plaintiff's official acknowledgment arguments rejected.

**B.     Plaintiff's Speculation About the Material Withheld Via Exemption 3 Is Insufficient.**

More broadly, Plaintiff attempts to undercut the agency's invocation of Exemption 3 by speculating that release of the details about the alleged misconduct would not "reveal specific sources and methods of intelligence collection." Blaine Decl. ¶ 30 (ECF No. 13-3); *see also* Pl.

6

Br. at 11-12. Such speculation is insufficient to undercut the CIA's sworn statement that the information withheld under Exemption 3 was covered by the National Security Act and the CIA Act. *See* Blaine Decl. ¶¶ 28-30. An agency declaration's "presumption of good faith [] cannot be rebutted by 'purely speculative claims.'" *SafeCard Servs., Inc. v. Secs. Exch. Comm.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Especially in the national security area, as is at issue here, courts regularly defer to the agency's attestation that the information withheld falls within, for instance, the ambit of the National Security Act. *E.g.*, *Assassination Archives & Rsch Ctr. v. CIA*, 334 F.3d 55, 59, 60-61 (D.C. Cir. 2003) (affirming that release of CIA's five-volume compendium of biographical information on "Cuban Personalities" in its entirety would reveal intelligence sources and methods, despite plaintiff's allegation that CIA previously released some of same information, and recognizing that "the National Security Act of 1947 . . . meets the two criteria of Exemption 3"); *ACLU v. Dep't of Def.*, 628 F.3d 612, 619, 626 (D.C. Cir. 2011) (recognizing "the National Security Act . . . as an exemption statute under exemption 3" and concluding that agency properly asserted Exemption 3 and the National Security Act to withhold transcripts of Combat Status Review Tribunals and documents detainees submitted in connection with those hearings); *Nat'l Sec. Couns. v. CIA*, 320 F. Supp. 3d 200, 215 (D.D.C. 2018) (accepting CIA explanation that disclosure of screenshots and classification markings "would 'expose Agency information systems to outside threats by providing [access instructions],'" and disclosing classification markings would reveal areas of intelligence interest, sources, and other intelligence methods under Section 102(A)(i)(1) of the National Security Act of 1947). Plaintiff's speculation that the agency has not properly invoked the two referenced Exemption 3 withholding statutes is just that

7

– speculation that provides no proper basis to discount the Blaine Declaration. To the contrary, it is no surprise, given the subject matter of the Inspector General report at issue, that withheld portions of the report reveal "classified sources and methods, locations of CIA bases and stations, controlled access and dissemination markings, and information pertaining to foreign relations or foreign activities of the United States," as well as "organization information and CIA personnel identifying information." ECF No. 13-7 (*Vaughn* index); *see also* Blaine Decl. ¶¶ 20-30. Given the sensitivity of such information and Congress's determination that it should be withheld in order to protect the nation, the Court should credit the CIA's declaration and *Vaughn* index and uphold the agency's Exemption 3 invocations.

**C.     Because the Only Information Withheld Under Exemption 5 Was Also Withheld Under Exemption 3, the Court Need Not Evaluate Foreseeable Harm.**

"The CIA invoked the deliberative process privilege to withhold certain portions on page 95 of the 2005 [Inspector General] report consisting of recommendations from the [Inspector General] to senior decision makers, including the CIA Director." Blaine Decl. ¶ 32; *see also* Ex. A hereto (page 95 of the 2005 Inspector General report as released to Plaintiff). As the exemption markings on that page reveal, *see* Ex. A, the only material withheld under Exemption 5 was also withheld under Exemption 3 pursuant to both the CIA Act and the National Security Act. Under the plain language of the FOIA as modified by the FOIA Improvement Act, the foreseeable harm requirement "does not apply to information that is 'exempted from disclosure under subsection (b)(3).'" *Citizens United v. Dep't of State*, Civ. No. 18-1862 (RDM), 2021 U.S. Dist. Lexis 141908, at *33 (D.D.C. July 29, 2021) (quoting 5 U.S.C. § 552(a)(8)). In enacting the referenced withholding statutes, "Congress has done the necessary balancing and enacted FOIA to represent the 'cross-currents' of concern." *Crooker v. ATF*, 670 F.2d 1051, 1074 (D.C. Cir. 1981). As Congress has statutorily exempted the at-issue information, and Congress specifically decided that

foreseeable need not be shown in order to withhold information that is covered by an Exemption 3 withholding statute, because the only information as to which Exemption 5 was applied is also protected under Exemption 3, the Court need not perform a foreseeable harm analysis.

Even if it did, however, the Court should uphold the withholding under Exemption 5. Plaintiff concedes that Defendant has satisfied the deliberative process threshold; Plaintiff only disputes whether the foreseeable harm requirement is satisfied. *See* Pl. Br. at 14 ("Whether or not the recommendation satisfies the deliberative process privilege, the CIA has failed to show that disclosing it would foreseeably harm an interest protected by FOIA."). Plaintiff appears to argue that there should be no chilling effect foreseeable harm because the Inspector General's position is statutorily authorized.

The CIA found foreseeable harm that would result due to the nature of the Inspector General report—related to an investigation of misconduct allegations—as well as the report's reliance on confidential testimony and "how disclosure of the [Inspector General's] recommendations related to those investigations would inhibit the frank conversation and free exchange of ideas that the privilege is designed to protect." Blaine Decl. ¶ 35. To carry its burden at summary judgment under Exemption 5, the government must demonstrate that the materials at issue are covered by the deliberative process privilege, which Plaintiff concedes, and that it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege. *See Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020); *see also* 5 U.S.C. § 552(a)(8)(A)(i)(I). To meet the foreseeable-harm standard, the agency is to link the withheld information and the foreseen harm. *See, e.g., Jud. Watch, Inc. v. Dep't of Com*., 375 F. Supp. 3d 93, 100 (D.D.C. 2019). The CIA has done just that here, drawing a straight line between the Inspector General's recommendations to CIA officials and the chilling effect, not

9

only on the Inspector General, but on the operations of the Office of the Inspector General. *See* Blaine Decl. ¶¶ 32-34. Even if Plaintiff is correct that the Inspector General is statutorily protected, the chilling effect still would affect the Inspector General's office's staff. Moreover, given the "sensitivity of the context" and "the purpose of those communications bearing on sensitive undercover operations" and the like, the foreseeability of the harms that would result from disclosure is manifest. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021).

Finally, with regard to Plaintiff's request for in camera review, courts have "broad discretion in determining whether in camera review is necessary." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 577-78 (D.C. Cir. 1996). When "affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith," a court may grant summary judgment without conducting an in camera review. *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Because these conditions are satisfied here, there is no warrant for in camera review.

\*   \*   \*

**CONCLUSION**

For the reasons stated herein and in Defendant's Motion for Summary Judgment, Defendant's motion should be granted and Plaintiff's Cross-Motion for Summary Judgment should be denied.

Dated: February 7, 2024         Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ Kenneth Adebonojo
       KENNETH ADEBONOJO
       Assistant United States Attorney
       601 D Street, N.W. Civil Division
       Washington, D.C. 20530
       (202) 252-2562

*Counsel for the United States of America*