UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SETH HETTENA, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-0877 (JEB) |
| ) | |
| v. ) | |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
CROSS-MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION

Plaintiff Seth Hettena showed in his opening brief why many of the CIA's redactions are improper. The CIA responds by purporting to refute arguments Hettena did not make—that the official acknowledgment doctrine applies to the whole Report—and ignoring core arguments he did make: that, as a matter of law, a CIA agent's cover-up is not an intelligence source or method, and that this Court has repeatedly rejected the agency's interpretation of the CIA Act. The CIA also largely abandons its original arguments on Exemption 5 foreseeable harm, now arguing only that disclosure of the Inspector General's recommendation might chill his staff. That argument fails, among other reasons, because the CIA has redacted the staff's identities.

The Court should review the Report *in camera*. As shown in Hettena's opening brief and as demonstrated further below, the CIA misconstrues the statutes it relies on for its redactions. And the agency could not have properly applied statutes it did not properly construe. Further, by making a supplemental release that removed Exemption 3 material, the CIA necessarily acknowledged that some of its initial redactions were unlawful. The CIA could have clarified the basis for that supplemental release via declaration. But despite claiming in its ninth extension

motion that such a declaration would be forthcoming, one never came. *See* Mot. For Extension of Time ¶ 2 (noting that CIA counsel was "awaiting a supplemental declaration from Agency Counsel" and arguing that the CIA "would be unable to finalize Defendant's filing without the supplemental declaration"). In these circumstances, the Court's review is necessary to ensure the agency's redactions comply with the law.

## II. ARGUMENT

### A. The CIA must release declassified and officially acknowledged parts of the Report.

In his opening brief, Hettena argued that the Court should order the CIA to remove "certain categories of redactions." P. Mem. at 2, ECF No. 18. Those redactions included information that the CIA declassified and officially acknowledged. Hettena pointed to two sources for declassification and official acknowledgment: a declassification order by the CIA Director, and a report by the Army's Criminal Investigation Division ("CID") that the CIA necessarily reviewed before its release. *See id*. at 7-9. He argued that the CIA was required to disclose information referenced in those two documents. *See id*.

The CIA responds primarily by agreeing with Hettena that some information in the Report might be properly public (presumably, the materials in its supplemental release) but arguing that Hettena failed to show that the CIA declassified or officially acknowledged the whole Report. *See* D. Opp. at 4, ECF No. 31 ("While he may be able to point to some information from the Inspector General report that had been declassified or in the public domain, Plaintiff is unable to demonstrate that the entirety of the Inspector General report has been previously disclosed by official acknowledgement."). That argument is a *non-sequitur*, as Hettena has never argued that the CIA officially acknowledged the whole Report—only the parts referenced by the CIA Director's declassification order and the CID report.

The CIA takes no explicit position on whether the CIA Director's declassification order serves as an official acknowledgment. But it does dispute that the CID report qualifies. Specifically, it argues that the CID report does not qualify because it was released by the Army, not the CIA. *See* D. Opp. at 6.

The CIA is correct that, as a matter of circuit precedent, the official acknowledgment doctrine only applies to documents acknowledged by the FOIA'ed agency or its parent. *ACLU v. CIA*, 710 F.3d 422, 429 n.7 (D.C. Cir. 2013). But it has no answer to Hettena's argument that the CID report qualifies even under that precedent—specifically, because the CID report bears markings that the CIA reviewed it in advance of the Army's release, as required by Department of Defense regulations in light of the CIA's equities in the report. *See* P. Mem. at 9; Hettena Decl. Ex. 4 at 60, 110, 112, ECF No. 18-3; 32 C.F.R. § 286.7(d)(1). The CIA ignores its own evident consultation with the Army and its consent to the Army's release of that information.

No case appears to have considered whether the official acknowledgment doctrine precludes an agency from withholding information when (1) a second agency consults it with respect to the information, (2) the second agency then releases the information under FOIA, and (3) the fact of the consult is plain from the face of the records and the surrounding circumstances.[1] But as Hettena argued, and the CIA does not directly dispute, the principles animating the official acknowledgment doctrine favor its application here. After all, the CIA can claim no "lingering doubts" as to the veracity of the information if it itself has approved the information's release under FOIA. *Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 816 (D.C. Cir. 2021). That is no different from the CIA releasing the information itself, which the agency does not dispute would qualify as an official acknowledgment.

---

[1] The undersigned could not find one, and the CIA does not cite one.

Finally, though the CIA made a supplemental release that un-redacts some officially acknowledged and declassified information, *see generally* Match Decl. Ex. 1, it has not explained how it singled out those passages. It does not claim to have un-redacted all the information declassified and officially acknowledged by the CIA Director. *See generally* D. Opp. And as it disputes that the CID report qualifies, it presumably did not un-redact information appearing only in that source. Thus, the CIA has not met its burden. As discussed below, *in camera* review is warranted to address this issue.

B. **The CIA has not established that Exemptions 1 and 3 apply to facts about CIA agents' possible cover-up of and interference with the OIG's investigation.**

In his opening brief, Hettena argued that Exemption 1 and the National Security Act do not apply to information about individual CIA agents' possibly covering up their misconduct, destroying evidence, lying to investigators, or conspiring to defraud the United States—all of which the Report investigates them for—because such activities do not fall within the CIA's "mandate to conduct foreign intelligence." *CIA v. Sims*, 471 U.S. 159, 169 (1985). *See* P. Mem. at 10-12. He also argued that the Exemption 3 via the CIA Act does not apply to information about the CIA's functions, regulations, and policies, citing three decisions of this Court that expressly rejected the CIA's claim that it does. *See* P. Mem. at 12-13 (citing *Whitaker v. CIA*, 31 F. Supp. 3d 23, 33 (D.D.C. 2014), aff'd sub nom. *Whitaker v. Dep't of State*, No. 14-5275, 2016 WL 9582720 (D.C. Cir. Jan. 21, 2016); *Sack v. CIA*, 53 F. Supp. 3d 154, 168-69 (D.D.C. 2014); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 176 (D.D.C. 2013)).

The CIA does not directly argue that, as a matter of statutory interpretation, its agents' possibly lying to CIA OIG investigators, conspiring to defraud the United States, and the like qualify as intelligence sources or methods—which obviously they do not. It does not try to explain how disclosing facts about investigations into that possible misconduct could possibly reveal

sources or methods.[2] And it does not contend with or even acknowledge the multiple decisions of this Court rejecting its interpretation of the CIA Act or proffer any case supporting its position. Instead, the CIA argues only that courts "regularly defer to the agency's attestation that the information withheld falls within, for instance, the ambit of the National Security Act" and that Hettena merely "speculate[s]" otherwise. D. Opp. at 7.

The CIA is wrong for three reasons.

First, as a matter of common sense, the Court can owe no deference to an agency's application of a statute that the agency demonstrably mischaracterizes. To do so would contradict FOIA's *de novo* review provision, 5 U.S.C. § 552(a)(4)(B). The Court recognized as much in *National Security Counselors*: "In sum, the Court holds that the CIA's proposed construction of 50 U.S.C. § 403g [the National Security Act] is overly broad. As a result, the CIA has inappropriately withheld information under FOIA Exemption 3." *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 184. Here, as shown in Hettena's opening brief, and as the CIA does not attempt to refute, the CIA interpreted too broadly both statutes it invokes under Exemption 3.

Second, even in national security cases, courts require agency declarations to justify redactions with "specific detail" that "demonstrates that the information withheld logically falls within the claimed exemption." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). The agency therefore may not prevail merely by relying on "conclusory statements." *Whitaker*, 31 F. Supp. at 32; *see also id.* at 37 (holding that the CIA did not meet its burden to show that the

---

[2] To reiterate, Hettena is not arguing that the CIA must disclose the Report's entire analysis of the cover-up allegations. Some of that analysis could well discuss properly exempt material. For example, if the Report finds that a CIA agent lied about an unacknowledged intelligence method, the CIA may withhold the specifics of the method under the National Security Act. But it may not withhold the fact that the agent lied, because the lie itself is not an intelligence method, and disclosing the mere fact that an agent lied about some unidentified topic would not disclose that topic. *See* P. Mem. at 11-12.

National Security Act applies to FOIA processing materials). But here, the CIA offers no specific detail about the cover-up portion of the Report, and the only statement that could apply to it is wholly conclusory: that disclosure "would reveal specific sources and methods of intelligence collection." Blaine Decl. ¶ 30. To be sure, Blaine describes *other* categories of information that Hettena does not dispute are exempt unless declassified or officially acknowledged: covert personnel, locations of agency facilities, intelligence activities, intelligence methods, and foreign liaison relationships. *See id*. at ¶¶ 20-25. But none of these apply to the cover-up investigation.

Third, the CIA claims that the Court should defer to the Blaine Declaration, which states in substance that the Exemption 3 statutes apply to everything the agency withheld. *See* Blaine Decl. ¶¶ 28-30, ECF No. 13-3. But Blaine made those statements when discussing the version of the Report that the agency first produced to Hettena. Since then, the CIA produced a new version of the Report that removed a number of the redactions Blaine says were exempt. *Compare* Hettena Decl. Ex. 1 *with* Match Decl. Ex. 1. Thus, under the CIA's own position, Blaine's declaration is inaccurate: some of the material she said was exempt in fact is not.

The CIA could not respond by claiming, as agencies sometimes do, that the later release was an exercise of discretion. That is because agencies are *required* to withhold information covered by the National Security Act. *See, e.g.*, *Shapiro v. DOJ*, 37 F. Supp. 3d 7, 26 (D.D.C. 2014) (holding that the agency "correctly construes the National Security Act as a federal statute that leaves it with no discretion in withholding from the public information about intelligence sources and methods") (cleaned up). Given the agency's implicit acknowledgment that the Blaine Declaration is inaccurate, it can warrant no deference. And the CIA has not supplied a supplemental declaration that could, in appropriate circumstances, fill that gap.

In sum, the CIA has not met its burden to withhold, under Exemptions 1 and 3, parts of the Report concerning the agency's investigation into its agents' possible cover-up.

### C. The CIA has not shown that disclosing the Inspector General's recommendation would cause foreseeable harm under Exemption 5.

The CIA cited Exemption 5 in connection with its Inspector General's recommendation at the end of the Report. *See* Match Decl. Ex. 1 at 87. Hettena does not challenge the application of Exemption 5, but disputes that the CIA has made the required foreseeable harm showing. In its opening brief, the CIA argued that its deliberations would be chilled because disclosing the recommendation would supposedly allow a comparison of the Inspector General's recommendation with the CIA's ultimate action. *See* D. Mem. at 18, ECF No. 13-2. Hettena then explained why this is incorrect as a factual matter: the CIA's ultimate action has never been disclosed. He showed that would prove too much: it would show that all Exemption 5 material satisfies the foreseeable harm requirement, contrary to Congress's express purpose in enacting that requirement. And he further showed that any chill on the Inspector General is extremely implausible given his statutory duties to make the recommendation, the presumption that government officials discharge their duties, and the Inspector General's near-absolute immunity from removal. *See* P. Mem. at 14-16.

The CIA now changes tack and responds primarily that the Court need not conduct a foreseeable harm analysis at all because the recommendation is supposedly also covered by Exemption 3. *See* D. Opp. at 8-9. That argument fails for the reasons given above. *See* Section II.B, *supra*. The CIA mischaracterizes the Exemption 3 statutes, and its application of them thus warrants no deference. Plus, the CIA's declaration says nothing about the recommendation in connection with Exemption 3 and thus fails to "demonstrate[] that the information withheld

logically falls within the claimed exemption." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *See generally* Blaine Decl.

The CIA makes no serious response to Hettena's argument that the Inspector General would not be chilled given his statutory duties and protections. *See* D. Opp. at 9 (arguing without elaboration that the CIA "[drew] a straight line between the Inspector General's recommendations to CIA officials and the chilling effect"). It adds an argument that disclosure might chill staff within the CIA OIG, who are not entitled to similar protections from removal. *See id*. at 9-10. But that argument is implausible. The Report's cover page identifies only the Inspector General and redacts the staff members' names (to which Hettena does not object). *See* Match. Decl. Ex. 1 at 1. And the agency does not explain how public disclosure could chill deliberators whom the public cannot identify. Its conclusory assertion is far too speculative to satisfy the CIA's burden to "concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021). The CIA thus has not met its burden to show foreseeable harm.

### D. The Court should review the Report *in camera*.

In his opening brief, Hettena explained in detail why *in camera* review is appropriate in this case. *See* P. Mem. at 16-19. The CIA responds with one paragraph stating in conclusory fashion that *in camera* review is unwarranted because its declarations are reasonably specific and that the agency did not act in bad faith. *See* D. Opp. at 10. Given the absence of any meaningful response to Hettena's contrary arguments, Hettena respectfully refers the Court to his opening brief. But two additional points are in order.

First, *in camera* review is needed to decide whether the redactions to the supplemental release are consistent with the CIA's official acknowledgments. The CIA has never explained the rationale for that release, including why much of the Report remains redacted. Thus, there is a

substantial likelihood that additional passages may be improperly withheld, and the record contains no evidence with which the Court can make that determination.

Second, as explained above, before filing its opposition/reply, the CIA released parts of the Report that it initially argued were covered by the National Security Act. Because the National Security Act prohibits discretionary releases, the CIA has evidently concluded that those initial redactions were erroneous. At the same time, the CIA has produced no declaration explaining its change in position despite seeking and receiving a ninth extension for the primary purpose of completing that declaration. In light of this unexplained change in position, and given the indicia of bad faith cited in Hettena's opening brief—both in the underlying subject matter of the request (the CIA's treatment of detainees in the War on Terror) and the CIA's conduct in this case (its failure to address the CIA Director's declassification order that Hettena attached to his complaint)—the Court could reasonably doubt the agency's good faith in issuing its final set of redactions. *In camera* review is the proper mechanism to resolve those doubts. The Court should conduct one.

### III.    CONCLUSION

The Court should review the Report *in camera*, order all non-exempt parts produced, grant summary judgment to Hettena, and deny summary judgment to the CIA.

Dated:  March 8, 2024                                  Respectfully submitted,

*/s/ Stephen Stich Match*
Matt Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Jason Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
foia@loevy.com

*Counsel for Plaintiff*